Court of Appeals
Fourth Court of Appeals District of Texas



# MEMORANDUM OPINION

No. 04-11-00478-CV

Joseph **STELLY**,
Appellant

v.

**SAN ANTONIO AEROSPACE, L.P.** and Kevin Strickland,
Appellees

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 332665
Honorable David J. Rodriguez, Judge Presiding

Opinion by:      Phylis J. Speedlin, Justice

Sitting:         Karen Angelini, Justice
                 Phylis J. Speedlin, Justice
                 Rebecca Simmons, Justice

Delivered and Filed:  May 30, 2012

AFFIRMED

Joseph Stelly appeals a summary judgment dismissing his claims against San Antonio

Aerospace, L.P. (the "Company").[1]  In challenging the summary judgment, Stelly specifically

complains the trial court erred by: (1) impliedly holding that the Company was entitled to a

defense under *Faragher/Ellerth* because no adverse employment action was taken; and (2)

---

[1] Stelly alleged claims for racial harassment, sexual harassment, retaliation, and assault; however, Stelly's argument in his brief and the authorities he cites relate only to his harassment claims.  Accordingly, we need not address Stelly's retaliation and assault claims.  *See Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 646 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Querner v. Rindfuss*, 966 S.W.2d 661, 668-69 (Tex. App.—San Antonio 1998, pet. denied).

failing to strike the affidavit of David Rodriguez because he was an interested witness. We affirm the trial court's judgment.

## BACKGROUND

Stelly was employed as a security guard at the Company which was located on the premises of an airport. With encouragement from Kevin Strickland, who was an acting lead on the second shift for security guards, Stelly transferred to second shift. As an acting lead, Strickland had no authority to hire, fire, or suspend employees. Instead, David Rodriguez, who was the Company's Security Administrator, supervised all security officers.

Prior to a shift meeting, Stelly and Strickland were summoned into the office of another acting lead John Fierros. Fierros stated that he knew the two had some differences and were "always horseplay[ing]." Strickland complained that it was hard working with Stelly, and Stelly responded that Strickland was spreading rumors about him. Fierros told Stelly to "hush up." When Strickland then complained that Stelly was listening to other people say "bad stuff" about him, Stelly interjected that Strickland "talk[ed] about everybody on the premises." Fierros again told Stelly to "hush up" and that Fierros would "have Strickland['s] back" if Stelly said anything during the shift meeting because Strickland was the lead.

During the shift meeting, another employee asked Rodriguez if it was okay for an acting lead to talk about employees or spread rumors about them behind their backs. Rodriguez said the behavior would not be acceptable and further stated, "Strickland, you know, if I hear anything like that, you're going to be suspended from your job." After the shift meeting, Strickland was upset and admitted to Stelly that he had told other employees that Stelly was "gay."

Sometime later, Strickland reported to Rodriguez that Stelly had allowed a person entry onto the airport premises without a badge. When Rodriguez asked Stelly about the incident, Stelly admitted that he had allowed "an older guy" entry without a badge. Rodriguez suspended Stelly for one day for violating company policies by allowing the person entry onto the airport premises without a badge. Although Stelly attempted at that time to complain to Rodriguez about Strickland's actions in general, he admitted that he never reported either the sexual harassment or racial harassment by Strickland to Rodriguez, Rodriguez's supervisor, John Melton, or anyone in the human resources department.

The only time Stelly reported the harassing behavior to Rodriguez was the day Stelly informed Rodriguez that he was resigning to take another job. In response to the reported behavior, Rodriguez immediately escorted Stelly to human resources, and an investigation was undertaken regarding the reported behavior. Both the human resources director and Rodriguez asked Stelly what action the Company could take for Stelly to remain employed. Stelly responded that he would require a pay raise. In his exit interview, Stelly stated that his reason for leaving was higher pay. Before leaving the Company, Stelly was paid for the day he was suspended and informed that Strickland had been terminated as a result of the investigation.

The Company filed a traditional motion for summary judgment as to Stelly's claims against the Company for racial and sexual harassment. The trial court granted summary judgment in favor of the Company, and Stelly appeals.

## STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled

to judgment as a matter of law. TEX. R. CIV. P. 166a(c). An appellate court reviewing a summary judgment must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007).

### RODRIGUEZ'S AFFIDAVIT

Stelly contends that the trial court erred in failing to strike Rodriguez's affidavit because he was an interested party. We disagree.

Rule 166a(c) of the Texas Rules of Civil Procedure provides, "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness …, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c). Stelly does not cite the rule or otherwise argue how Rodriguez's affidavit does not meet the rule's requirements. Having reviewed the affidavit, we hold the trial court did not err in properly considering the affidavit in accordance with Rule 166a(c).

### *FARAGHER/ELLERTH*

The United States Supreme Court has established the applicable standard for determining the vicarious liability of an employer for harm caused by misuse of supervisory authority. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998). An employer is vicariously liable for harassment by a supervisor if the supervisor takes tangible employment action against the subordinate. *Ellerth*, 524 U.S. at 762. Stated differently, employers are strictly liable for a supervisor's harassment that culminates in a tangible employment action. *Penn. State Police v. Suders*, 542 U.S. 129, 143 (2004). "A tangible employment action constitutes a significant change in employment status,

such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. "A tangible employment action in most cases inflicts direct economic harm." *Id*. at 762.

"When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Faragher*, 524 U.S. at 807. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. An employer's promulgation of an antiharassment policy with a complaint procedure is some evidence that the first element of the defense has been satisfied. *Id*. Evidence that the employee failed to use a complaint procedure provided by the employer "will normally suffice to satisfy the employer's burden under the second element of the defense." *Id*. at 807-08.

A.    Tangible Employment Action

Stelly contends the *Faragher/Ellerth* defense is not available to the Company because Strickland took tangible employment action against him in the form of the one-day suspension and his constructive discharge.

With regard to the one day suspension, the evidence conclusively established that Rodriguez, not Strickland, authorized the suspension. The Company is only vicariously liable under the test announced by the Supreme Court if the tangible employment action is taken by the supervisor who created the hostile work environment. *See Faragher*, 524 U.S. at 807; *see also Padilla v. Flying J, Inc.*, 119 S.W.3d 911, 915 (Tex. App.—Dallas 2003, no pet.) (noting employer could raise affirmative defense where tangible employment action not authorized by

supervisor alleged to have committed the harassing acts). Because Rodriguez authorized Stelly's suspension, the suspension is not a tangible employment action that would preclude the Company from asserting the *Faragher/Ellerth* affirmative defense.

Stelly relies on *Straub v. Proctor Hosp.*, 131 S.Ct. 1186, 1193 (2011), to assert that an independent investigation does not relieve an employer of fault if the investigation relies on the supervisor's biased report. Stelly contends that the Company was not relieved of fault by Rodriguez's investigation because Strickland reported the incident that led to the suspension. The *Straub* court, however, also noted, "if the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action …, then the employer will not be liable." In this case, the evidence conclusively established that Stelly admitted to Rodriguez that he allowed a person without a badge onto the airport premises. Although Strickland's bias may have led him to report the incident to Rodriguez, the evidence established as a matter of law that Rodriguez's decision to suspend Stelly was based on Stelly's violation of the Company's policy, not based on Strickland's report of the incident.

With regard to the alleged constructive discharge, we note that absent an official act underlying the constructive discharge, constructive discharge does not rise to the level of a tangible employment action that would preclude the Company from asserting the *Faragher/Ellerth* affirmative defense. *See Penn. State Police*, 542 U.S. at 148-49. Moreover, constructive discharge is defined as "'an employee's reasonable decision to resign because of unendurable working conditions.'" *Baylor Univ. v. Coley*, 221 S.W.3d 599, 605 (Tex. 2007) (quoting *Penn. State Police*, 542 U.S. at 141). "A constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign." *Cox v. Waste Mgmt. of Tex., Inc.*, 300 S.W.3d 424, 433 (Tex. App.—Fort Worth 2009,

pet. denied). Thus, a reasonable person test is applied in reviewing the employee's decision to resign. *See id.* at 435. In *Cox*, the Fort Worth court held the evidence established as a matter of law that the conditions of an employee's employment should not have compelled him to resign where the employer responded to an employee's complaint within two days after the complaint surfaced, offered the employee alternatives for remaining employed, and promptly suspended and placed a written reprimand in the file of the supervisor about whose actions the complaint was made. *Id.* at 434; *see also Tiner v. Tex. Dept. of Transp.*, 294 S.W.3d 390, 395 (Tex. App.—Tyler 2009, no pet.) (rejecting claim of constructive discharge where employer investigated employee's complaint within one week and terminated the coworker who had taken the actions which were the basis for the complaint within a month after the complaint); *Wal-Mart Stores, Inc. v. Itz*, 21 S.W.3d 456, 475 (Tex. App.—Austin 2000, pet. denied) (noting that after a complaint is made, "an employer must be given sufficient time to remedy the situation by actions reasonably calculated to prevent further harassment before a constructive discharge may be found").

In this case, the evidence conclusively established that Stelly's resignation was not a reasonable decision because he failed to report Strickland's harassment to Rodriguez or the human resources department before electing to resign. Once reported, the evidence established that the Company immediately undertook an investigation resulting in Strickland's termination. Moreover, the evidence established that Rodriguez and the human resources director encouraged Stelly to remain in the Company's employ. Stelly's response, however, was that he would only remain employed if the Company raised his pay. In his exit interview, Stelly reported his reason for leaving was a different job with more pay, and the only thing the Company could have done to prevent him from leaving was a pay increase. Accordingly, the evidence established that

Stelly was not constructively discharged as a matter of law because Stelly's decision to resign without reporting Strickland's harassment was not reasonable and Stelly's decision to resign was based on his desire for a higher paying job, not on intolerable working conditions.

B.       *Faragher/Ellerth* Affirmative Defense

In order to prevail on its motion for summary judgment, the Company had to conclusively establish: (a) that the Company exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) that Stelly unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Company. *Faragher*, 524 U.S. at 807.

With regard to the first element, the undisputed evidence established that the Company's employee handbook contains an extensive antiharassment policy, and Stelly acknowledged receiving a copy of the handbook containing the policy. The undisputed evidence further established that the Company had an EEO/Harassment Policy containing a specific complaint procedure for employees to follow, and Stelly acknowledged receiving a copy of the policy. Finally, the uncontroverted evidence established that Rodriguez immediately escorted Stelly to the human resources department upon hearing his complaint regarding Strickland's harassing conduct, and the complaint was promptly investigated, resulting in Strickland's termination. Accordingly, the evidence established as a matter of law that the Company exercised reasonable care to prevent and correct promptly harassing behavior.

With regard to the second element, Stelly testified in his deposition that he did not report Strickland's actions to Rodriguez or the human resources department. Stelly cites to his affidavit as evidence that he did report the conduct; however, because the statement in the affidavit clearly contradicts Stelly's earlier deposition testimony involving a material point, without explanation, the trial court properly disregarded the affidavit which could not defeat the motion for summary

judgment.[2] *Cantu v. Peacher*, 53 S.W.3d 5, 10-11 (Tex. App.—San Antonio 2001, pet. denied).

Although Stelly stated in his affidavit that he "tried" to report the conduct to Fierro and

---

[2] In his deposition, Stelly testified as follows:

Q.  …. Did you ever use the word "harass" or the word "harassment" to Mr. Fierros in talking about Mr. Strickland?
A.  No.
Q.  Did you ever complain about any instance that you believe was sexual harassment to Mr. Rodriguez?
A.  No.
Q.  Did you ever complain about any instance of conduct that you believe was sexual harassment to Mr. Melton?
A.  No.
Q.  Did you ever complain about any instance of sexual harassment or what you believe was sexual harassment to anyone in human resources?
A.  No.

***

Q.  So did you ever complain to anyone in human resources at San Antonio Aerospace about any instance of what you thought was something racial from Mr. Strickland?
A.  No.
Q.  Did you tell anyone in human resources [at] San Antonio Aerospace that you were the victim of racial harassment?
A.  Anyone?
Q.  Yes.  In human resources at San Antonio Aerospace.
A.  No.  No.
Q.  Did you ever tell anyone at San Antonio Aerospace in human resources that you were the victim of sexual harassment?
A.  No.
Q.  Did you ever tell Mr. Melton that you were the victim of sexual harassment at San Antonio Aerospace?
A.  No.
Q.  Did you ever tell Mr. Melton that you were a victim of racial harassment at San Antonio Aerospace?
A.  No.
Q.  Did — I'm sure you're going to see where I'm coming from on this.  Did you ever tell Mr. Rodriguez that you were the victim of sexual harassment?
A.  No.
Q.  Did you ever tell Mr. Rodriguez that you were the victim of any racial harassment?
A.  No.
***
A.  …. And like I was trying to tell David that day he sent — he write me — wrote me this suspension, I said, "David, you don't understand what I have to go through with Strickland."  I say, "Strickland always, you know, saying all kinds of stuff about all his employees."
    And David told me, say, "I don't even want to hear it."  He say, "I listen to it.  I listen to it, but you are going — you are going to get suspended today."  And I looked at him and I said, "Okay.  All right."  I say, "So no matter what I say about Strickland, I'm still going to get suspended?  What about him?  What about him getting suspended?"
    I say, "Strickland been harassing me.  He been sexually harassing me."  He say, "I don't even want to hear it.  You all always horseplay."  He say, "Because you still getting suspended.  I'll listen to what you got to say, but you still getting suspended," and he sent me home that day.
Q.  Mr. Stelly, is it now your testimony that you did tell Mr. Rodriguez that you were being sexually harassed?  I thought it was your testimony that you had not told him that?

Rodriguez, "attempts" to report in which Stelly never makes reference to the term sexual or racial harassment are not reasonable efforts to take advantage of the complaint procedure promulgated by the Company. *See Lauderdale v. Tex. Dept. of Crim. Justice*, 512 F.3d 157, 165 (5th Cir. 2007) (concluding employee acted unreasonably in failing to file a second complaint where employer had provided multiple avenues for the complaint and employee knew initial complaint was ineffective). Stelly also stated in his affidavit that Strickland told him Stelly would be disciplined if Stelly reported Strickland's behavior; however, Stelly testified at his deposition that he was present at a meeting where Rodriguez told Strickland that he would suspend Strickland if he was spreading rumors about the employees. Stelly also testified that he told Rodriguez everything was "fine" even when Strickland was not present. Finally, Stelly's reporting of the conduct on the day he submitted his resignation does not defeat the defense especially given the Company's prompt investigation of the reported conduct. *See id.*

Because the evidence conclusively established both elements of the *Faragher/Ellerth* affirmative defense, summary judgment was properly granted with regard to Stelly's harassment claims.

## CONCLUSION

The judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice

---

A.      Well, no, I didn't tell him exactly that, but I did tell him — I told him, I said, "You don't know what I been going through with Strickland." I say, "Strickland do all kind of things to me." And I didn't come out and tell him sexual harassment, but I say, "Strickland do all kind of things to me and he do it to other employees."

Despite this earlier deposition testimony, Stelly signed an affidavit which was attached to his response to the Company's summary judgment motion stating, "I immediately complained to my supervisors. Yet, despite my complaints, the harassment continued…." Given the clear conflict between the deposition testimony and the subsequent affidavit, the trial court properly disregarded the affidavit testimony. *Cantu*, 53 S.W.3d at 10-11.