# NO. 12-08-00322-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *PENNY TINER,* *APPELLANT* | § | *APPEAL FROM THE 402ND* |
| *V.* *TEXAS DEPARTMENT OF* *TRANSPORTATION,* | § | *JUDICIAL DISTRICT COURT* |
| *APPELLEE* | § | *WOOD COUNTY, TEXAS* |

## *OPINION*

Penny Tiner appeals from the trial court's entry of summary judgment in favor of Appellee, the Texas Department of Transportation. In two issues, Tiner contends the trial court erred in granting summary judgment and dismissing her retaliation and discrimination claims. We affirm.

## BACKGROUND

Tiner worked for the Texas Department of Transportation (TxDOT) from 1986 to 1998 and again from 2000 until she resigned in November 2003. During her second period of employment at TxDOT, Tiner and other of her coworkers had a problem with a coworker who was rude, abusive, and generally obnoxious. Tiner complained about the coworker's behavior to her supervisor in May 2003 and followed up with a written complaint on May 14, 2003. The coworker was fired in June 2003.

Tiner made a further complaint when her supervisor slammed a door following an argument with her. This led to a meeting attended by Tiner, her supervisor, and their regional supervisor. Tiner alleges that, during the time between her first complaint about the coworker and her resignation, her supervisor stopped talking to her and ended her access to his email account. Tiner resigned in November 2003. In her letter of resignation, Tiner stated that she had decided to evaluate

her "current goals and investigate new opportunities."

In 2004, Tiner filed a complaint with the Civil Rights Division of the Texas Workforce Commission. In 2005, Tiner filed a lawsuit in district court alleging that she was constructively terminated and that she suffered discrimination based on her gender and retaliation for engaging in a protected activity. TxDOT filed both traditional and no evidence motions for summary judgment, and Tiner filed a response to each motion. After a hearing, the trial court granted TxDOT's motion for summary judgment and dismissed Tiner's claims. Tiner filed a motion for a new trial. The trial court denied that motion, and this appeal followed.

## SUMMARY JUDGMENT

Tiner argues that the trial court erred in granting summary judgment against her. In her first issue, she argues that her complaint was timely filed. In her second issue, Tiner argues that she presented prima facie evidence of employment discrimination and retaliation.

### Standard of Review

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment must either conclusively negate at least one essential element of the plaintiff's cause of action or conclusively establish the elements of an affirmative defense. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and to present to the trial court any issues that would preclude summary judgment. *See City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

Alternately, or in addition, after an adequate time for discovery has passed, a party without the burden of proof at trial may move for a no evidence summary judgment on the ground that the nonmovant lacks supporting evidence for one or more essential elements of its claim. TEX. R. CIV. P. 166a(i). Once a no evidence motion has been filed in accordance with rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We review a no evidence

motion for summary judgment under the same legal sufficiency standards we use to review a directed verdict. ***King Ranch, Inc. v. Chapman***, 118 S.W.3d 742, 750–51 (Tex. 2003). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. ***Id.*** at 751. More than a scintilla of evidence exists if the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions. ***Id.*** Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. ***Id.***

For both traditional and no evidence summary judgment motions, we review de novo the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. ***Sudan v. Sudan***, 199 S.W.3d 291, 292 (Tex. 2006); ***KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.***, 988 S.W.2d 746, 748 (Tex. 1999). If the trial court's order does not specify the grounds on which it granted summary judgment, we affirm the trial court's ruling if any of the theories advanced in the motion are meritorious. ***State Farm Fire & Cas. Co. v. S.S.***, 858 S.W.2d 374, 380 (Tex. 1993). When a party moves for both a traditional and a no evidence summary judgment, we first review the trial court's summary judgment under the no evidence standards of rule 166a(i). *See **Ridgway***, 135 S.W.3d at 600. If the no evidence summary judgment was properly granted, we do not reach arguments relating to the traditional motion for summary judgment. *See **id**.* at 602.

Our review is limited by the issues presented to the trial court. *See* TEX. R. CIV. P. 166a(c). When reviewing a summary judgment, courts of appeals should consider all summary judgment grounds ruled on by the trial court and preserved for appellate review that are necessary for final disposition of the appeal. *See **Cincinnati Life Ins. Co. v. Cates***, 927 S.W.2d 623, 626 (Tex.1996). However, an appellate court may, in the interest of judicial economy, consider other grounds that the movant preserved for review, despite the fact that the trial court did not rule on them. ***Id***.

## Applicable Law

Texas law prohibits employment discrimination with respect to race, color, disability, religion, sex, national origin, or age. TEX. LAB. CODE ANN. § 21.051 (Vernon 2006). This statute was designed by the legislature to "provide for the execution of the policies of Title VII of the Civil

Rights Act of 1964 and its subsequent amendments." *Id.* § 21.001(1); *see also **Griggs v. Duke Power Co.***, 401 U.S. 424, 431, 91 S. Ct. 849, 853, 28 L. Ed. 2d 158 (1971). Accordingly, Texas state courts turn to analogous federal statutes and cases interpreting them to guide their reading and interpretation of employment discrimination statutes. *See **Ysleta Indep. Sch. Dist. v. Monarrez***, 177 S.W.3d 915, 917 (Tex. 2005).

Section 21.051 of the Labor Code provides that

> [a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB. CODE ANN. § 21.051. To establish a prima facie case of gender discrimination, Tiner had to prove that she 1) was a member of a class protected by the act, 2) she was qualified for her position, 3) she was terminated, or suffered adverse action, and 4) she was treated less favorably than similarly situated members of another class. *See **Ysleta***, 177 S.W.3d at 918.[1]

To establish a prima facie case of retaliation, Tiner had to show that she 1) engaged in a protected activity, 2) an adverse employment action occurred, and 3) there was a causal connection between participation in the protected activity and the adverse employment decision. *See **Thomas v. Clayton Williams Energy, Inc.***, 2 S.W.3d 734, 739 (Tex. App.–Houston [14th Dist. 1999, no pet.); *see also **McCullough v. Houston County Tex.***, 297 F. App'x 282, 288–89 (5th Cir. 2008).

---

[1] TxDOT argues, based on ***Meinecke v. H & R Block of Houston***, 66 F.3d 77, 83 (5th Cir. 1995), that Tiner cannot show gender discrimination because she was replaced by members of the same protected class. Tiner responds, citing ***Septimus v. University of Houston***, 399 F.3d 601, 609 (5th Cir. 2005), that she must show either that she was replaced by a person outside her protected class or that another similarly situated person was treated more favorably. We note that the Texas Supreme Court has stated that the precise elements of the initial showing required by ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–25, 36 L. Ed. 2d 668 (1973), vary depending upon the allegations. There is recent case law supporting TxDOT's position. *See **Ptomey v. Tex. Tech Univ.***, 277 S.W.3d 487, 492 (Tex. App.–Amarillo 2009, pet. denied). Because Tiner suffered no adverse employment action, we need not decide whether she was required to prove that she was replaced by a person from another class.

4

**Analysis**

TxDOT's motion for no evidence summary judgment was properly granted because Tiner failed to provide summary judgment evidence showing that there was a genuine issue of material fact as to whether she suffered adverse employment action. On appeal, Tiner argues that she did suffer adverse employment action. Specifically, she argues that her supervisor ignored her complaint about the coworker, she was required to attend a meeting with her supervisor and a regional supervisor, her supervisor ignored her, but on one occasion got into a loud argument with her, her supervisor ended her access to his email account, and that TxDOT constructively discharged her.

Whether an employee has suffered adverse employment action is often not a contested part of a discrimination or retaliation case. For example, in *Ysleta*, a case Tiner cites on this issue, the defendant fired the two plaintiffs. That did not happen here. Tiner also did not suffer any of the more common forms of adverse employment action in terms of being denied raises or promotions or being given an unfavorable evaluation. Tiner acknowledges this and argues that she was constructively discharged. *See* *Passons v. Univ. of Tex. at Austin*, 969 S.W.2d 560, 562 (Tex. App.–Austin 1998, no pet.) (constructive discharge serves as legal substitute for discharge element of prima facie case of discrimination).

A constructive discharge occurs when an employee makes the reasonable decision to resign because of unendurable working conditions. *See* *Baylor Univ. v. Coley*, 221 S.W.3d 599, 604–05 (Tex. 2007) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342, 2351, 159 L. Ed. 2d 204 (2004)). Tiner's constructive discharge claim is based on the same underlying facts that Tiner argues support her claim of discrimination and retaliation. Specifically, Tiner argues that her decision to resign was compelled by the working conditions that included her supervisor's handling of the coworker and his treatment of her.

In *Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 9 (Tex. App.–Tyler 2000, pet. ref'd), we considered a case where a manager alleged that he had been constructively discharged. In that case, the worker had received unfavorable work evaluations, was asked if he wished to transfer, had disciplinary procedures initiated against him, was refused permission to attend to personal matters on his lunch break, and had a manager make derogatory comments to him. We concluded that this was not evidence that the worker had been constructively discharged due to his age. *Id.* at 12.

In *Bertrand*, we observed that an employer must be permitted to make reasonable personnel

decisions and that critical statements must be allowed in the form of unfavorable work evaluations. *Id.* at 9. As part of the burden shifting that applies, and in a summary judgment context, a plaintiff may show that seemingly ordinary business decisions are, in fact, motivated by a discriminatory motive. *See M. D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000). Furthermore, to constitute a constructive discharge, the employer's actions must have been taken with the intention of forcing the employee to resign. *Bertrand*, 37 S.W.3d. at 9 (citing *Smith v. Goodyear Tire & Rubber Co.*, 895 F.2d 467, 472 (8th Cir. 1990)).

Whether an employee would feel forced to resign is case and fact specific, but the following employment actions are relevant, singly or in combination: 1) demotion, 2) reduction in salary, 3) reduction in job responsibilities, 4) reassignment to menial or degrading work, 5) reassignment to work under a younger or less experienced/qualified supervisor, 6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation, or 7) offers of early retirement (or continued employment on terms less favorable than the employee's former status). *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649–50 (5th Cir. 2004) (citing *Brown v. Kinney Shoe Corp*., 237 F.3d 556, 566 (5th Cir. 2001)).

In this case, Tiner did not show that the working conditions were unbearable, or that her employer was attempting to encourage her to resign. Tiner argues that the issue with the coworker was handled improperly. This was an ordinary management problem. TxDOT began an investigation about a week after Tiner's written complaint, and the coworker was terminated about a month after her complaint was made. This is not evidence that TxDOT sought to compel Tiner to resign. The coworker's conduct was wrong—he was abusive, threatening, and unpleasant—but there is no basis to conclude that TxDOT somehow created unendurable working conditions, especially when it fired him within a month of Tiner's complaint. And there is no reasonable basis on which to conclude that the situation with the coworker caused Tiner to resign months later.

Nor do the other actions of TxDOT, when viewing the record in a light most favorable to Tiner, show that TxDOT was attempting to encourage her to resign. The evidence that her supervisor got into an argument with her, ended her access to his email, and stopped talking to her does not rise to the level of conduct designed to badger, harass, or humiliate Tiner. Nor is there a reason to conclude that the conduct was calculated to encourage her resignation. Indeed, Tiner was given an annual job evaluation by her supervisor less than a month before she left TxDOT. The

6

evaluation did not identify any areas in which she needed improvement, contained no negative comments at all, and was generally complimentary of her work performance.

The meeting with the regional supervisor likewise does not tend to show that TxDOT was attempting to encourage Tiner to resign. It appears that management was attempting to assuage Tiner's concerns following the incident with the slammed door and, more generally, her concerns about her supervisor. Tiner can point to no evidence that this single meeting was badgering, harassing, or humiliating or that it was calculated to encourage her to resign. Indeed, the meeting took place months before she resigned. Accordingly, Tiner has not shown that she was constructively discharged.

For essentially the same reasons, we conclude that Tiner also failed to show adverse employment action or that the actions complained of were motivated by retaliation or discrimination on the basis of her gender. For purposes of discrimination, employer liability may result from a refusal to hire an individual, a discharge of an individual, or discrimination in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment. *See* TEX. LAB. CODE ANN. § 21.051(a)(1). For retaliation, the standard can be slightly lower. In construing a federal antiretaliation statute, the Supreme Court held that actionable retaliation includes actions that a "reasonable employee" would find to be "materially adverse," meaning that it "might well have dissuaded a reasonable worker from making or supporting" a complaint. *See **Burlington N. & Santa Fe Ry. v. White***, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006). In ***Burlington***, for example, the Court held that reassignment from a forklift job to a track laborer job along with a thirty-seven day suspension without pay supported a finding of retaliation. *Id.*, 548 U.S. at 72–73, 126 S. Ct. at 2417–18. The Court recognized that it was the nature of the employment action in context that was important when evaluating such claims, but that relief was not available for trivial harms. *Id.*, 548 U.S. at 68, 126 S. Ct. at 2415.

The actions Tiner complains of here do not rise to this level. Contrary to her assertion that her complaint about a coworker was ignored, the record shows that TxDOT initiated an investigation and terminated the coworker the next month. Affording the required deference to Tiner's factual assertions, we cannot conclude that the meeting with the regional manager, which appears to have occurred in July 2003, was an adverse employment action. The meeting was apparently called to address Tiner's concerns about the way the coworker situation had been handled. It was designed

7

to dissuade her from making further complaints, but by listening to her concerns. There is no evidence that Tiner was threatened or otherwise treated in a materially adverse way during this meeting. On the basis of the summary judgment record, we are not persuaded that this single meeting is an adverse employment action, or that it shows that TxDOT acted with a retaliatory or discriminatory motive.[2]

Tiner also argues that she was treated differently from the male coworker who was fired. Specifically, she asserts that he was able to meet informally with his supervisor after she made the oral complaint about him, whereas her meeting was more formal. There is no evidence that any disparity was influenced by gender discrimination or that her supervisors were doing anything other than attempting to address her concerns. And, once again, Tiner was given a favorable performance evaluation, and her coworker was fired. In short, this case represents a disagreement in the workplace as to how to manage a difficult employee. Tiner was not satisfied with the way her supervisor handled the situation. This led to a disruption in the workplace that included unnecessary actions by the supervisor–slamming a door–and actions the supervisor thought were necessary to protect himself–limiting conversation and ending Tiner's access to his email.

These actions do not rise to the level of an adverse employment action. Tiner was not fired or demoted, and she was not reassigned or suspended. The minor actions that did occur do not represent meaningful changes in the conditions or privileges of her employment. And furthermore, we do not conclude that these actions would dissuade a reasonable worker from making or supporting a protected complaint. Finally, there is no evidence that her supervisor's actions were motivated by discrimination on the basis of the fact that Tiner is a female.

For the foregoing reasons, we hold that Tiner did not produce more than a scintilla of evidence to show that she suffered adverse employment action. Accordingly, the trial court did not err in granting TxDOT's motion for no evidence summary judgment and dismissing her lawsuit. Tiner's second issue is overruled. Therefore, we do not consider whether her claim was timely filed, as she argues in her first issue, nor do we consider her arguments relating to TxDOT's motion for traditional summary judgment.

---

[2] This is not to say that such a meeting could not be so confrontational that it could constitute retaliation or be evidence of employment discrimination. We mean to say, simply, that on the basis of the summary judgment evidence, there is not evidence to show that this specific meeting was an adverse employment action.

8

**DISPOSITION**

We *affirm* the judgment of the trial court.

    SAM GRIFFITH    

Justice

Opinion delivered August 19, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

9