Opinion filed July 18, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00182-CV

_____

## GLADYS HERNANDEZ, Appellant

## V.

## SELECT MEDICAL CORPORATION AND SELECT SPECIALTY HOSPITAL-MIDLAND, INC., Appellees

### On Appeal from the 385th District Court

### Midland County, Texas

### Trial Court Cause No. CV47188

### M E M O R A N D U M   O P I N I O N

Gladys Hernandez appeals the trial court's no-evidence summary judgment in favor of Select Medical Corporation and Select Specialty Hospital-Midland, Inc. In her sole appellate issue, Hernandez contends that the summary judgment evidence raised genuine issues of material fact on her retaliatory discharge claim

under Section 161.134 of the Texas Health and Safety Code[1] and that, therefore, the trial court erred when it granted summary judgment. We modify and affirm.

*Background*

In February 2009, Hernandez began employment with Select Specialty Hospital-Midland, Inc. as a clinical liaison and as a respiratory therapist. Select Specialty is a long-term acute care hospital. On October 16, 2009, Hernandez resigned her employment.

In December 2009, Hernandez filed this suit against Select Specialty and its parent company, Select Medical Corporation. We will refer to the Select entities collectively as Select. Hernandez alleged that Select constructively terminated her employment because she reported patient care violations that had occurred at the hospital. Hernandez alleged claims for retaliatory discharge under Section 161.134 of the Health and Safety Code, intentional infliction of emotional distress, and gross negligence. Select filed a no-evidence motion for summary judgment. Hernandez filed a response to the motion. Following a hearing, the trial court entered an order in which it granted the motion. Hernandez limits her appeal to a challenge of the trial court's summary judgment on her retaliatory discharge claim under Section 161.134.

*Standard of Review*

We review a no-evidence summary judgment under the same legal sufficiency standard as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *Heirs of Bernardo Del Real v. Eason*, 374 S.W.3d 483, 486 (Tex. App.—Eastland 2012, no pet.). A no-evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to a challenged element of the nonmovant's claim on which the nonmovant would have the burden

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 161.134 (West 2010).

2

of proof at trial. *King Ranch*, 118 S.W.3d at 751. If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id.* On the other hand, when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007); *King Ranch*, 118 S.W.3d at 751.

We review the evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Eason*, 374 S.W.3d at 486. We may not consider any evidence by the movant unless it creates a fact question. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004). Where, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied upon for its ruling, summary judgment will be affirmed on appeal if any of the summary judgment grounds advanced by the movant are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

*Applicable Law*

Section 161.134 provides that "[a] hospital, mental health facility, or treatment facility may not suspend or terminate the employment of or discipline or otherwise discriminate against an employee for reporting . . . a violation of law." HEALTH & SAFETY § 161.134(a). To prove a retaliatory discharge claim under Section 161.134, a plaintiff must show: (1) that she was an employee of a hospital, mental health facility, or treatment facility; (2) that she reported a violation of law; (3) that the report was made to a supervisor, an administrator, a state regulatory agency, or a law enforcement agency; (4) that the report was made in good faith;

and (5) that she was suspended, terminated, disciplined, or otherwise discriminated against.  *Id.* 161.134(a), (f); *Barron v. Cook Children's Health Care System*, 218 S.W.3d 806, 810 (Tex. App.—Fort Worth 2007, no pet.).  A plaintiff who asserts a retaliation claim under Section 161.134 has the burden of proof on the elements of the claim.  *Tomhave v. Oaks Psychiatric Hosp.*, 82 S.W.3d 381, 385 (Tex. App.—Austin 2002, pet. denied).  However, the statute contains a rebuttable presumption that "the plaintiff's employment was suspended or terminated, or that the employee was disciplined or discriminated against, for making a report related to a violation if the suspension, termination, discipline, or discrimination occur[red] before the 60th day after the date on which the plaintiff made a report in good faith."  HEALTH & SAFETY § 161.134(f); *Tomhave*, 82 S.W.3d at 385.

A constructive discharge from employment occurs when an employer makes conditions so intolerable that an employee feels reasonably compelled to resign.  *Emeritus Corp. v. Blanco*, 355 S.W.3d 270, 281 (Tex. App.—El Paso 2011, pet. denied); *Cox v. Waste Mgmt. of Tex., Inc.*, 300 S.W.3d 424, 433 (Tex. App.—Fort Worth 2009, pet. denied).  To constitute constructive discharge, the employer's actions must have been taken with the intention of forcing the employee to resign.  *Tiner v. Tex. Dep't of Transp.*, 294 S.W.3d 390, 395 (Tex. App.—Tyler 2009, no pet.).  The following employment actions are relevant to the determination of whether a reasonable employee would feel compelled to resign: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.  *Cox*, 300 S.W.3d at 433–34; *Tiner*, 294 S.W.3d at 395.

*Select's No-Evidence Motion for Summary Judgment*

In its motion, Select challenged two elements of Hernandez's retaliatory discharge claim. Specifically, Select asserted (1) that there was no evidence that Hernandez reported a violation of law under Section 161.134 and (2) that there was no evidence that Hernandez was constructively discharged, suspended, terminated, disciplined or otherwise discriminated against.

*Summary Judgment Evidence*

Hernandez did not submit an affidavit in support of her response to Select's motion but did attach her deposition testimony as an exhibit to her response. She also attached three other exhibits to her response: Jessica Boyce's deposition testimony; Select's code of conduct; and an information sheet about "Select Specialty Hospitals LTAC." Applying the above standard of review, we will review the summary judgment evidence in the light most favorable to Hernandez.

Hernandez began her employment with Select in February 2009. She was employed as a clinical liaison and as a respiratory therapist at the hospital. As a clinical liaison, Hernandez worked in a marketing position for the hospital. In that position, Hernandez's job duties required her to establish rapport with physicians in an effort to obtain patient referrals to the hospital from those physicians. Hernandez informed physicians about the services provided by the hospital and solicited patient referrals from the physicians. When a physician made a referral to the hospital, Hernandez contacted the patient or the patient's family to obtain permission for the patient's transfer to the hospital. Hernandez also determined whether the hospital had an available bed for the patient. If a bed was available, Hernandez arranged for the patient's transfer to the hospital.

Select maintained a confidential hotline that employees could call to anonymously report complaints or concerns about matters, conditions, or patient care at the hospital. In October 2009, Hernandez called the hotline. During the

call, she reported that the hospital had a shortage of nursing staff and cardiac monitors. Hernandez testified that her call "came down to the monitors and not enough nursing staff." The hotline operator told Hernandez that the call would remain anonymous. Hernandez told Deanna Huse—her respiratory therapist supervisor—and Lana Burton—the hospital's human resources director—that she had called the hotline.

A few days later, Hernandez's clinical liaison supervisor, Jessica Boyce, called Hernandez and requested Hernandez to meet with her. On October 12, 2009, Boyce and Hernandez met at a Starbuck's in Midland. Hernandez recorded the meeting on her cell phone.

At the meeting, Boyce informed Hernandez that she was aware of Hernandez's call to the hotline. Boyce asked Hernandez why she had called the hotline instead of reporting her concerns directly to Boyce. Hernandez said that she had not reported the concerns to Boyce because Boyce did not work in the patient care area of the hospital. Hernandez and Boyce discussed Hernandez's concerns about a nursing shortage and a cardiac monitor shortage. Boyce told Hernandez to separate her clinical liaison position from her respiratory therapy position, to focus on her clinical liaison position, and to "stay below the radar." Boyce told Hernandez that she did not want Hernandez to "get wrapped up in" the issues that related to staffing and equipment at the hospital because Boyce did not want Hernandez "to jeopardize [her] job." Boyce told Hernandez that Connie Siffring, the Chief Executive Officer of the hospital, already thought that Hernandez was a "drama queen" based on rumors that Hernandez had had an extramarital affair with a co-employee. Hernandez and Boyce also had discussions about a co-employee who was always in trouble "with corporate."

At the meeting, Boyce asked Hernandez why she was working as a respiratory therapist. Hernandez replied that she needed the extra money. Boyce

6

told Hernandez that she had just given Hernandez a raise in her clinical liaison position and that Boyce would see if she could get Hernandez an additional raise so that Hernandez would not have to work as a respiratory therapist. According to Hernandez, Boyce stated, "I can get you extra money so you don't work respiratory." Based on Boyce's statements, Hernandez felt threatened that her job as a respiratory therapist was in jeopardy. Hernandez believed that Boyce was telling her not to work as a respiratory therapist.

On or about October 14, 2009, Boyce conducted a clinical liaisons' meeting. At the meeting, Boyce informed the clinical liaisons that she had received complaints that they had been spending too much time at the hospital and that Hernandez, in particular, had been spending more time at the hospital than the other clinical liaisons. Boyce told the clinical liaisons to stay off the hospital premises unless they first called Siffring or Boyce to report that they would be at the hospital and to provide the reason why they would be there.

On October 16, 2009, Hernandez was instructed to admit a patient to a room in which another patient in the room was suspected to have C-DIFF, which is a contagious disease. The hospital was awaiting lab results on the other patient to determine whether the patient had C-DIFF. Hernandez believed that the new patient should not be admitted to the room because of possible exposure to C-DIFF. Hernandez reported the situation to Boyce. Boyce told Hernandez to talk to Siffring. Hernandez told Siffring that the patient in the room had pending lab work and had all the signs and symptoms of C-DIFF and that, therefore, the new patient should not be put in the same room. Siffring responded that, because the hospital did not have the lab results, the hospital did not know whether the patient had C-DIFF. Siffring told Hernandez to admit the new patient to the room. Hernandez called Boyce and told Boyce that she was not going to admit the patient. Boyce told her that she had to admit the patient. Boyce hung up on Hernandez.

7

Hernandez called Boyce again and told her that the hospital could not admit the patient and that she was refusing to admit the patient. Hernandez hung up the phone, wrote a resignation letter, and turned it in to the human resources department. Hernandez testified that she resigned because "[she] felt like [she] could not jeopardize [her] license or a healthy patient over what [Siffring and Boyce] said was okay."

*Analysis*

Hernandez contends that she presented more than a scintilla of evidence on both of the challenged elements of her retaliatory discharge claim. She asserts that the summary judgment evidence raised a fact issue on (1) whether she reported a violation of the law and (2) whether she was constructively discharged, terminated, disciplined, or otherwise discriminated against by the hospital for reporting a violation of law.

During the hotline call, Hernandez reported that a nursing shortage and a cardiac monitor shortage existed at the hospital. For the purpose of our analysis, we will assume without deciding that Hernandez's hotline call constituted a report of a violation of law as contemplated in Section 161.134 of the Health and Safety Code. Therefore, we will consider whether Hernandez met her summary judgment burden to produce more than a scintilla of evidence that she was constructively discharged, suspended, terminated, disciplined, or otherwise discriminated against for making the report.

Hernandez relies on the rebuttable presumption in Section 161.134(f) in arguing that the summary judgment evidence raised a fact issue. Section 161.134(f) gives rise to a rebuttable presumption that suspension, termination, or discipline of, or discrimination against, an employee occurred as a result of the employee's good faith report of a violation of law, if the suspension, termination, discipline, or discrimination occurred within sixty days of the report.

8

Based on the statutory language, the rebuttable presumption applies only if a plaintiff first proves that her employment was suspended or terminated or that she was disciplined or discriminated against.

Select did not terminate Hernandez's employment. Rather, Hernandez resigned from employment because she disagreed with Siffring's and Boyce's instructions to admit the patient to the room. Hernandez contends that she was constructively discharged from her employment. Hernandez asserts in her brief that, "[a]s a result of making the hotline call, [she] was precluded from performing services of a respiratory therapist for the Hospital" and that, "[e]ffectively, [she] was removed from her position as a respiratory therapist within three days of her report to the hotline and the same day of her verbal report to her respiratory therapist supervisor." She also asserts that Select discriminated against her by restricting her to certain areas of the hospital and by requiring her to call Siffring or Boyce to obtain permission before going to the hospital. Hernandez contends that, because she was not allowed to go freely to the hospital, her ability to perform her respiratory therapist job was negatively impacted. Hernandez asserts that the evidence raised fact issues on a direct retaliatory issue and on the elements of constructive discharge.

The summary judgment evidence does not support Hernandez's assertions. Hernandez presented no evidence that Select precluded her from working as a respiratory therapist, that Select removed or terminated her from that position, or that Select engaged in any other action in an effort to adversely affect her employment as a respiratory therapist. There was no evidence that Boyce told Hernandez that she could not work as a respiratory therapist. While Hernandez believed that Boyce told her not to work as a respiratory therapist at their meeting, Hernandez's subjective belief does not constitute summary judgment proof that Boyce removed her from her respiratory therapist position. *Tex.-Div.-Tranter,*

9

*Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994). The evidence showed that Boyce instructed the clinical liaisons to stay away from the hospital unless they had a reason to be there. Boyce's instruction did not restrict Hernandez's access to the hospital. The instruction merely required Hernandez and the other clinical liaisons to call Siffring or Boyce if they needed to come to the hospital. Thus, the evidence did not show that Hernandez's access to the hospital was restricted, much less that her ability to work as a respiratory therapist was restricted. Hernandez also presented no evidence that Select undertook any of the adverse employment actions that are relevant to determining whether an employee would feel compelled to resign. *See Cox*, 300 S.W.3d at 433–34; *Tiner*, 294 S.W.3d at 395.

The summary judgment evidence did not raise a genuine issue of material fact on the constructive discharge issue. Hernandez did not present any summary judgment evidence that Select constructively discharged, suspended, terminated, disciplined, or otherwise discriminated against her. The evidence did no more than create a mere surmise or suspicion that Select may have engaged in prohibited retaliatory action against Hernandez. Therefore, we conclude that the trial court did not err when it granted summary judgment to Select. Hernandez's appellate issue is overruled.

*Select's Cross-Issue*

The trial court's summary judgment order was silent as to an award of costs. Select filed a motion to modify the judgment in which it requested the trial court to amend the judgment to award Select its costs under TEX. R. CIV. P. 131. The trial court did not rule on the motion.

In a cross-issue, Select contends that the trial court erred by failing to grant its motion to modify. Rule 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." Rule 141 provides that "[t]he court may, for good cause, to be stated on

10

the record, adjudge the costs otherwise than as provided by law or these rules." TEX. R. CIV. P. 141. In this case, the trial court did not make a "good cause" finding. Because Select was the prevailing party in the trial court and because good cause for not awarding costs to Select is not stated on the record, we conclude that the trial court abused its discretion by failing to award taxable costs to Select as required by Rule 131. *See Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376–77 (Tex. 2001). Select's cross-issue is sustained.

### *This Court's Ruling*

We modify the trial court's summary judgment order to provide that all costs are taxed against Hernandez. As modified, we affirm the summary judgment order of the trial court.


TERRY McCALL

JUSTICE


July 18, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.