

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00061-CV

OFFICE OF THE ATTORNEY GENERAL, Appellant

V.

GAYLE ACKLEY COLLARD, Appellee

On Appeal from the 62nd District Court
Lamar County, Texas
Trial Court No. 91796

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

# MEMORANDUM OPINION

After voluntarily retiring from the Office of the Attorney General (OAG), Gayle Ackley Collard filed an age-discrimination case alleging that she was constructively discharged. The OAG filed a plea to the jurisdiction, claiming that Collard failed to "adduce[] evidence that [the] OAG had violated the Texas Labor Code and that [the OAG] therefore was immune from suit." The trial court denied the OAG's plea to the jurisdiction. Because we find that Collard did not meet her burden to establish constructive discharge, we reverse the trial court's judgment and render judgment dismissing Collard's age discrimination claim.

## I. Background

Collard began working at the OAG as a child support officer (CSO) in December 1999. In the fall of 2019, Selah Jabr became the managing assistant attorney general in the Child Support Division of the Paris, Texas, office, where Collard worked. On June 30, 2022, Collard retired at the age of fifty-five.

Almost ten months after her retirement, Collard filed suit against the OAG for a violation of Section 21.051 of the Texas Labor Code, asserting that she was constructively discharged from her position due to her age. *See* TEX. LAB. CODE ANN. § 21.051. She asserted that the "*OAG, by and through Jabr, treated* [*her*] *less favorably than other employees in the Paris Office who were similarly situated but were outside the protected class*," specifically alleging that Jabr referred to her as the "older" CSO and that Jabr stated that Collard did not have as high of an IQ as the "younger" CSO. Collard also stated that Jabr seemed to "express[] delight" when he learned of Collard's retirement. In support of her petition, Collard alleged that (1) "Jabr

2

shuffled the job duties," giving her the "longer, harder tasks," (2) Jabr gave prompt attention to the documents drafted by the younger CSO and "slow walked" Collard's documents, (3) Jabr ignored calls and messages from Collard, (4) Jabr dismissed suggestions made by Collard, but praised the younger CSO for similar ideas, and (5) Jabr tasked the younger CSO to train new employees, a role that had previously been Collard's. Collard provided alleged examples of each of the five "categories" of misconduct. Collard stated that she reported Jabr's "mistreatment" to management but that nothing was done and the mistreatment continued until she felt compelled to resign.

In response to Collard's petition and after conducting some discovery, the OAG filed a plea to the jurisdiction and no-evidence summary judgment motion that sought to dismiss Collard's lawsuit, arguing that Collard could not establish a valid claim under the Texas Labor Code. The OAG asserted in its plea that Collard voluntarily retired from her position with the OAG and could not show that she suffered an adverse employment action, that she was not treated less favorably than similarly situated persons outside her protected class, and that she could not show pretext for intentional age discrimination. Collard responded to the plea, and the trial court held a hearing. The trial court denied the OAG's plea to the jurisdiction, no-evidence motion for summary judgment, and traditional motion for summary judgment. This appeal ensued.

## II.     Plea to the Jurisdiction

We review a trial court's denial of a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The OAG is a governmental unit that

has "sovereign immunity from lawsuits, except where the Legislature waives . . . immunity." *Flores v. Tex. Dep't of Crim. Just.*, 634 S.W.3d 440, 450 (Tex. App.—El Paso 2021, no pet.) (citing *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011)). "Sovereign immunity deprives a trial court of [subject-matter] jurisdiction . . . ." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). The Legislature has provided a limited waiver of immunity for claims brought against governmental units alleging violations of the Texas Commission on Human Rights Act (TCHRA) as found in Chapter 21 of the Texas Labor Code. *Id.* at 636–37. The waiver extends only to suits in which the pleadings state a prima facie claim for a TCHRA violation, otherwise the governmental unit retains immunity from suit. *Tex. Dep't of Crim. Just. v. Flores*, 555 S.W.3d 656, 661 (Tex. App.—El Paso 2018, no pet.) (citing *Mission Consol.*, 372 S.W.3d at 636). In *Niehay*, the Texas Supreme Court explained,

> The TCHRA waives sovereign immunity, "but only if the plaintiff alleges facts that would establish that the state agency violated the Act and, when challenged with contrary evidence, provides evidence that is at least sufficient to create a genuine fact issue material to that allegation." In determining whether Niehay has met this burden, "we must assume that all evidence supporting [her] allegations is true, and we must resolve all doubts and make all reasonable inferences in [her] favor." "By intertwining the TCHRA's immunity waiver with the merits of a statutory claim, the Legislature ensures public funds are not expended defending claims lacking sufficient evidence to allow reasonable jurors to find the governmental entity liable."

*Tex. Tech Univ. Health Scis. Ctr. - El Paso v. Niehay*, 671 S.W.3d 929, 935 (Tex. 2023) (alterations in original) (footnotes omitted) (citations omitted) (quoting *Tex. Dep't of Crim. Just. v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 763 (Tex. 2018)).

"The plaintiff has the initial burden to plead facts showing the trial court's subject matter jurisdiction." *Drew v. City of Houston*, 679 S.W.3d 779, 784 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (citing *Miranda*, 133 S.W.3d at 226). "The burden then shifts to the governmental unit to show that the trial court lacks subject matter jurisdiction." *Id.* (citing *Miranda*, 133 S.W.3d at 228). "If the governmental unit does so, the plaintiff must raise a material fact issue to overcome the plea to the jurisdiction." *Id.* (citing *Miranda*, 133 S.W.3d at 228). "If the evidence creates a fact issue on jurisdiction, the trial court should deny the plea to the jurisdiction." *Id.* (citing *Miranda*, 133 S.W.3d at 228). "If the evidence is undisputed or fails to raise a fact issue about the jurisdictional issue, the trial court should grant the plea to the jurisdiction." *Id.* (citing *Miranda*, 133 S.W.3d at 228).

### A.    Age Discrimination

Collard asserts a claim against the OAG for age discrimination in violation of the TCHRA. The TCHRA prohibits an employer from discriminating against employees on the basis of "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE ANN. § 21.051. It is an "unlawful employment practice" under the TCHRA if, because an individual is forty years old or older, an employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LAB. CODE ANN. § 21.051(1); *see* TEX. LAB. CODE ANN. § 21.101; *Tex. Health & Human Servs. v. Sepulveda*, 668 S.W.3d 856, 864 (Tex. App.—El Paso 2023, no pet.).

> In an age-discrimination case, the plaintiff establishes a prima facie case with evidence that she (1) was a member of the protected class (that is, 40 years of age

5

or older), (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone significantly younger or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class.

*Flores*, 612 S.W.3d at 305 (citing *Mission Consol.*, 372 S.W.3d at 632). Here, there is no dispute that the first two elements have been met. Collard was fifty-five years old when she retired, and the OAG does not dispute that she was qualified for the position that she held for over twenty years. Instead, the OAG challenges the third and fourth elements.

### 1. Constructive Discharge

"Constructive discharge is 'an employee's reasonable decision to resign because of unendurable working conditions.'" *Drew*, 679 S.W.3d at 786 (quoting *Baylor Univ. v. Coley*, 221 S.W.3d 599, 605 (Tex. 2007) (quoting *Pa. St. Police v. Suders*, 542 U.S. 129, 141 (2004))). "A constructive discharge qualifies as an adverse personnel action under the TCHRA . . . ." *Id.* (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010)). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim. Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge . . . ." *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 925 (5th Cir. 2022) (citation omitted) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)). A constructive discharge "requires proof that the employer made the working conditions intolerable." *Drew*, 679 S.W.3d at 786 (quoting *Waffle House*, 313 S.W.3d at 805). "In other words, an employee is constructively discharged when 'the employer made the working conditions so intolerable that a reasonable person would feel compelled to resign.'" *Cnty. of El Paso v. Aguilar*, 600 S.W.3d 62, 91 (Tex. App.—El Paso 2020, no pet.) (quoting *Waffle*

6

*House*, 313 S.W.3d at 805 (citing *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 409 (Tex. App.—El Paso 2002, pet. denied))). "General allegations of mere 'harassment,' without more, are insufficient to raise an issue of material fact as to whether working conditions were so intolerable that a reasonable person would have felt compelled to resign." *Carlton v. Houston Cmty. Coll.*, No. 01-11-00249-CV, 2012 WL 3628890, at *17 (Tex. App.—Houston [1st Dist.] Aug. 23, 2012, no pet.) (mem. op.) (quoting *Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 178 (Tex. App.—Houston [14th Dist.] 1991, no pet.)). "The employee is not required to show that the employer 'subjectively intended to force the resignation.'" *Cnty. of El Paso*, 600 S.W.3d at 91 (quoting *Dillard*, 72 S.W.3d at 409). "It is the conditions, not the employer's state of mind, that controls." *Id.* (citing *Dillard*, 72 S.W.3d at 409).

"Whether an employee would feel forced to resign is case and fact specific . . . ." *Tiner v. Tex. Dep't of Transp.*, 294 S.W.3d 390, 395 (Tex. App.—Tyler 2009, no pet.). We can consider the following factors when determining whether a constructive discharge occurred for purposes of an employment-discrimination claim:

> (1) demotion, (2) reduction in salary, (3) reduction in job responsibilities, (4) reassignment to menial or degrading work, (5) reassignment to work under a supervisor who subjects the employee to discriminatory or harassing behavior, (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation, or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

*Drew*, 679 S.W.3d at 787 (citing *Hartranft v. UT Health Sci. Ctr.-Houston*, No. 01-16-01014-CV, 2018 WL 3117830, at *13 (Tex. App.—Houston [1st Dist.] June 26, 2018, no pet.) (mem. op.) (citing *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.))); *see Tiner*, 294 S.W.3d at 395.

7

Collard does not allege that she was demoted, had her salary reduced, had a reduction in job responsibilities, was reassigned to menial work, was harassed by anyone, or that she received offers of early retirement. Instead, her allegations focus on the behavior of and treatment she received from her manager, Jabr. The OAG, however, argues that the allegations by Collard do not amount to creating a workplace that is so intolerable that Collard had no choice but to resign from her position. We agree.

Here, Collard did not present evidence that her working conditions were so unbearable or abusive as to force resignation as her only response or that Jabr was encouraging her to resign. While Collard presented testimony from other OAG employees regarding the management style of Jabr and generally confirming some unprofessional or rude remarks made by Jabr to other employees, this type of conduct does not amount to creating a workplace so intolerable that Collard was forced to resign from her position. *See Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) ("[M]ere stray remarks, with nothing more, are insufficient to establish a claim of age discrimination . . . ."); *Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 10 (Tex. App.—Tyler 2000, pet. denied). Collard provided testimony from a colleague who stated that Jabr did not believe Collard to be smart and that Jabr told others that he believed her IQ was lower than the "younger CSO." However, the record is "devoid of any evidence pertaining to the context in which [Jabr] is alleged to have made [those] remark[s]." *Bertrand*, 37 S.W.3d at 10. Those "stray" remarks, allegedly made by Jabr, fail to establish age discrimination as relevant to Collard's employment with the OAG. *See id.*

8

Collard claims that Jabr "marginalized [her] and treated her as a non-person." She points to a meeting where Jabr embraced an idea of a younger employee after dismissing a similar idea from Collard. However, there is no evidence that Jabr's actions during the meeting were motivated by discrimination on the basis of the fact that Collard was older.

Collard also alleges that she was given harder assignments than the "younger CSO" and that her communications were largely ignored by Jabr. Yet, Collard has not established that she and the "younger CSO" were similarly situated, as required. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Flores*, 612 S.W.3d at 312 (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam)). "Though their circumstances need not be 'identical,' [*Monarrez*, 177 S.W.3d] at 917 n.3, they must be 'nearly identical,' *AutoZone, [Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008) (per curiam)]." *Id.* "Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *Id.* (quoting *Autozone*, 272 S.W.3d at 594). Collard merely established that the younger employee also held the title of CSO. Even so, the OAG presented evidence that the younger employee was not the same level CSO as Collard. Specifically, Collard was a CSO IV, while the younger employee was, during the relevant period, a CSO II and then a CSO III financial specialist. Thus, they had different job titles and responsibilities and were not similarly situated.

Finally, Collard claims that she was one of four employees over the age of fifty-five to retire between March and June 2022. Collard, however, points to no case support that suggests other retirements occurring under new management signify an age-discrimination issue.

While the evidence tends to show that there was a morale issue in the office, it does not amount to a workplace environment with conditions so unbearable as to force resignation. *See Tiner*, 294 S.W.3d at 395–96. The evidence shows, when viewing the record in a light most favorable to Collard, that Jabr's conduct toward her does not rise to the level of conduct designed to badger, harass, or humiliate Collard. Nor is there a reason to conclude that the conduct was calculated to encourage her resignation. Accordingly, we find that Collard has not shown that she was constructively discharged. We sustain the OAG's sole issue.

## III. Conclusion

We reverse the trial court's judgment and render judgment dismissing Collard's age-discrimination claim.


Scott E. Stevens
Chief Justice


Date Submitted:     October 28, 2025
Date Decided:      January 5, 2026

10